UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| WILLIE W., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.: 4:21-cv-00495-BLW-REP <br><br> **REPORT AND RECOMMENDATION** |

Pending is Plaintiff Willie W.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of his application for Social Security Disability Insurance benefits and Supplemental Security Income for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On November 2, 2017, Plaintiff filed applications for Title II Social Security Disability Insurance benefits and Title XVI Supplemental Security Income, alleging disability beginning November 5, 2015. This application was originally denied on December 22, 2017, and again on reconsideration on March 12, 2018. On March 22, 2018, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On August 19, 2019, ALJ Lyle Olson held a video hearing, at which time Plaintiff, represented by attorney Greg Maeser, appeared and testified. Thomas Audet, an impartial vocational expert, also appeared and testified at the same hearing.

On October 30, 2019, the ALJ issued a decision denying Plaintiff's claims, finding that he was not disabled within the meaning of the Social Security Act. Plaintiff timely requested

**REPORT AND RECOMMENDATION - 1**

review from the Appeals Council. On January 25, 2021, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff is now represented by attorney Bradley Parkinson and, having exhausted his administrative remedies, brings this case. He raises two points of error: (i) the ALJ's residual functional capacity determination is unsupported by substantial evidence due to his failure to properly evaluate the persuasiveness of Plaintiff's treating sources; and (ii) the ALJ's evaluation of Plaintiff's subjective symptoms is unsupported by substantial evidence. Pl.'s Brief at 1, 10-20 (Dkt. 18). Plaintiff requests that the Court either reverse the ALJ's decision and find that he is entitled to benefits, or remand the case for further proceedings. *Id*. at 20.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**REPORT AND RECOMMENDATION - 2**

ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. REPORT

A.  **The Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

**REPORT AND RECOMMENDATION - 3**

or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff did not engage in SGA since November 5, 2015 (the alleged onset date).  AR 23.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff has the following severe medically determinable impairments: "degenerative disc disease, lumbar spine; diabetes mellitus with peripheral neuropathy; and status post-myocardial infarction due to atherosclerotic heart disease of native coronary artery (status post-stenting x4 (April 9, 2018)) and chronic combined systolic and diastolic heart failure."  AR 23-24.

The third step requires the ALJ to determine the medical severity of any impairments, that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

**REPORT AND RECOMMENDATION - 4**

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Plaintiff's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. AR 25-26.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can lift and/or carry 20 pounds occasionally, 10 pounds frequently, sit (with normal breaks) for 6 out of 8 hours, stand and/or walk (with normal breaks) for 6 out of 8 hours, frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but only occasionally climb ladders or scaffolds. [Plaintiff] is able to frequently work at unprotected heights and frequently work with moving mechanical parts.

AR 26.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th

**REPORT AND RECOMMENDATION - 5**

Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Plaintiff is capable of performing past relevant work as a garage supervisor because this work does not require the performance of work-related activities precluded by his RFC. AR 31-32. Based on these findings, the ALJ concluded that Plaintiff was not disabled. *Id*. at 32-33.

**B.     Analysis**

   1.     <u>The ALJ Improperly Considered the Medical Opinion Evidence</u>

In evaluating Plaintiff's impairments and their limiting impacts, the ALJ considered medical opinions from Leslie Arnold, M.D.; Rex Head, M.D.; Claire DeHaan, NP-C; and Peter Valora, PA-C. AR 29-31. Plaintiff does not challenge the ALJ's evaluation of all four opinions. Instead, he specifically argues that the ALJ improperly evaluated PA-C Valora's and NP-C DeHaan's opinions. Pl.'s Brief at 11-17 (Dkt. 18). Each claim is taken up below.

   a.  *The Standard for Evaluating Medical Opinions*

Because this case was filed after March 17, 2017, the revised regulations governing the evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors. 20 C.F.R. § 416.920c(a). These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R.

**REPORT AND RECOMMENDATION - 6**

§ 416.920c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard.  *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

  b.  *PA-C Valora*

PA-C Valora saw Plaintiff three times before authoring a July 22, 2019 "Treating Source Statement – Physical Conditions" (the "Statement").  Therein, PA-C Valora indicated that Plaintiff (i) would be off task more than 25% of the time; (ii) is able to maintain concentration for less than 30 minutes; (iii) is likely to miss work at least four days per month; (iv) can occasionally lift 10 pounds, rarely lift 20 pounds, but never lift 50 pounds or more; (v) can rarely carry 10 pounds, but never carry 20 pounds or more; (vi) can sit, stand, and walk less than an hour during a workday; (vii) requires the option to sit and stand at-will; (viii) must lie down or recline eight times throughout a workday; (ix) can walk 100 feet but otherwise needs a cane; and (x) has additional manipulative, postural, and environmental limitations.  AR 644-47.

**REPORT AND RECOMMENDATION - 7**

The ALJ found these opinions unpersuasive and instead credited the opinions of other medical providers and agency doctors in finding that Plaintiff was not precluded from engaging in light work. AR 30-31. According to the ALJ, PA-C Valora's opinions are inconsistent with both (i) his own treatment notes, and (ii) the overall medical evidence of record. *Id*. Plaintiff disagrees. Pl.'s Brief at 11-15 (Dkt. 18) ("The ALJ's evaluation of the evidence, in general, lends no credence to his decision to find the opinion of PA-C Valora unpersuasive.").

The ALJ's proffered reasons for discrediting PA-C Valora's opinions appropriately focused on the supportability and consistency of those opinions, as required by 20 C.F.R. § 404.1520c(b)(2). *Supra*. However, upon closer examination, the undersigned agrees with Plaintiff (to a point) that not all of the ALJ's reasons are supported by substantial evidence.

To begin, the ALJ correctly noted that the limitations reflected in PA-C Valora's Statement do not track his own examination notes up to that point in time (the supportability factor). For example, a January 24, 2019 treatment note (when Plaintiff first established care with PA-C Valora) relates to blood-sugar testing. AR 581. At that time, Plaintiff denied back pain (though noted a history of back aches); denied muscle weakness; had full range of motion in his neck; and appeared "alert, in no acute distress, well-developed, and well-nourished." *Id*.

Plaintiff next saw PA-C Valora on April 4, 2019 to refill medication and to follow-up on an injured "left great toe." AR 579. At that time, Plaintiff's review of systems were "otherwise negative, with the exception of diabetes," and he again had full range of motion in his neck, and appeared "alert, in no acute distress, well developed, and well-nourished." *Id*.

Finally, on July 22, 2019 (the same date as the Statement), Plaintiff complained of worsening lower back pain and a burning sensation in his calves. AR 651. And, while Plaintiff's review of systems and general examination were again unremarkable, this time, PA-C Valora did note that Plaintiff's "low back is quite tender to palpation." *Id*.

**REPORT AND RECOMMENDATION - 8**

This is the extent of Plaintiff's treatment history with PA-C Valora leading up to the Statement. Crucially, these notes do not document any objective debilitating problems with Plaintiff's musculoskeletal systems that would prevent him from working – and certainly not to the degree stated in the Statement. This underscores the disconnect between PA-C Valora's treatment notes and his Statement. Simply put, the Statement's restrictive limitations stand alone and are not verified elsewhere by PA-C Valora. AR 30 (ALJ stating: "However, [PA-C Valora's] opinion is inconsistent with his own treatment notes, which record the claimant presenting on those three occasions with unremarkable musculoskeletal examination results aside from an injured toe."). As a result, PA-C Valora's Statement lacks the necessary internal support and is therefore of limited utility in understanding Plaintiff's true ability to work. *Houghton v. Comm'r of Soc. Sec. Admin.*, 493 Fed. App'x. 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were internally inconsistent and unsupported by the doctors' own treatment records or clinical findings).

Even so, the ALJ's simultaneous claim that PA-C Valora's Statement is inconsistent with the balance of the medical record (the consistency factor) is less sound. To support that position, the ALJ cited *only* to a February 15, 2018 consultative orthopedic examination by Rex Head, M.D. AR 31 (citing AR 330-39). There, Dr. Head appeared to opine that Plaintiff could perform a range of light to medium work with postural limitations. AR 338. But ironically, the ALJ did not find Dr. Head's opinions persuasive in the first instance, stating:

> Dr. Head is an acceptable medical source, but does not have a treatment relationship with [Plaintiff]. Instead, he based the opinion on the results of the consultative examination. *However, the grammatical issues in Dr. Head's opinion, including the failure to identify the extent to which [Plaintiff] can engage in a list of identified postural activities and the ambiguous reference to a manipulative limitation, render it vague and without a clear description of the claimant's maximum physical capacity to engage in basic work activities. For all of the foregoing reasons, the undersigned does not find the opinion to be persuasive.*

**REPORT AND RECOMMENDATION - 9**

(AR 30) (emphasis added).  In other words, as justification for his conclusion that PA-C Valora's Statement "is generally inconsistent with [Plaintiff's] presentation since the alleged onset date" (AR 31), the ALJ cited to an opinion that he had already found unpersuasive.  This somewhat paradoxical logic struggles to amount to substantial evidence for discrediting PA-C Valora's Statement as inconsistent with the record.

Perhaps it can be argued – though the ALJ did not make this clear – that, while Dr. Head's discrete opinions are unpersuasive, the objective findings within his examination nonetheless contradict PA-C Valora's opinions.  Assuming that to be the case, the ALJ relied only upon those findings within Dr. Head's examination that allegedly showed "only occasional tenderness to palpation" and "consistently intact strength and reflexes."  AR 31 (citing AR 330-39 (the entirety of Dr. Head's examination)).[1]  These reasons, and their support, are still not enough to satisfy the substantial evidence standard.

For example, though Dr. Head found no tenderness in one part of his examination, he expressly noted "[l]umbar tenderness" and "[c]ervical tenderness" in another.  *Compare* AR 337, *with* AR 336.  From this, the ALJ seemed to split the difference by settling on Plaintiff having

---

[1] The ALJ actually said this: "[PA-C Valora's] opinion is also generally inconsistent with the claimant's presentation since the alleged onset date with persistently diminished sensation below the shins but with only occasional tenderness to palpation and a reduced range of motion in his lumbar spine, and with consistently intact strength and reflexes."  AR 31.  Though not entirely clear on its face (and setting aside how a one-time examination can support a finding of "*occasional* tenderness to palpitation" and "*consistently* intact strength and reflexes), the undersigned understands this to mean that, since Plaintiff's alleged onset date, he has (i) presented with diminished sensation below the shins and with reduced range of motion in his lumbar spine, but (ii) has had only occasional tenderness to palpation and consistently intact strength and reflexes.  *But see* AR 28 (elsewhere, ALJ stating: "The treatment notes do indicate the presence of persistently diminished sensation in the claimant's lower extremities, *but record the claimant only occasionally presenting with tenderness and a reduced range of motion in his lower back*.") (emphasis added).   To the extent Plaintiff's range of motion in his back is in question to test the consistency of PA-C Valora's opinions, or the word "occasional[ly]" is read to qualify Plaintiff's "reduced range of motion in his lumbar spine," Dr. Head unequivocally notes an "abnormal" range of motion relating to Plaintiff's spine.  AR 336.

**REPORT AND RECOMMENDATION - 10**

"only occasional tenderness to palpation" in his decision, without acknowledging this distinction, explaining what it means, or discussing its significance toward rejecting PA-C Valora's opinions.[2] Similarly, while Dr. Head reported that Plaintiff displayed normal strength and muscle mass in his upper and lower extremities,[3] he also commented how Plaintiff was "in obvious pain" and showed difficulty in negotiating a chair and an exam table; difficulty squatting; tenderness in the hands, finger joints, shoulder, and back; and a reduced range of motion. *Compare* 330, 335, *with* 334-36. The ALJ again failed to reconcile these contrasts when questioning PA-C Valora's opinions.[4] These shortcomings combine to highlight how the ALJ's boilerplate commentary, alongside only a general reference to Dr. Head's examination, are insufficient to establish the substantial evidence needed to discredit PA-C Valora's opinions.

It may be the case that dots can be connected in a way that coordinates aspects of Dr. Head's clinical findings with other medical evidence to more accurately and fully confront PA-C Valora's opinions. To be sure, certain of Dr. Head's objective tests and observations can be

---

[2] Elsewhere in his decision, the ALJ makes the same representation about Plaintiff's "occasional" tenderness to palpation. *See* AR 27 & 28 (citing AR 319, 321, 366). But in addition to *not citing* to these other portions of the record when discussing PA-C Valora's opinions, they are not particularly instructive anyway. One record actually confirms "mild tenderness" (AR 319); another record speaks to unrelated stomach cramps/nausea complaints (AR 321); and the last record is a new patient treatment note that, while noting "no tenderness or swelling," acknowledges Plaintiff's antalgic gait, difficulty standing from a seated position, and total foot numbness in both feet (AR 366).

[3] Contrary to the ALJ's decision, Dr. Head's examination does not appear to discuss Plaintiff's alleged "intact . . . reflexes."

[4] Elsewhere in his decision, the ALJ makes the same representation about how Plaintiff consistently presented with intact reflexes and without any strength or coordination deficits. *See* AR 27 (citing AR 326, 366). But again, in addition to *not citing* to these other portions of the record when discussing PA-C Valora's opinions, they too are not persuasive here. One record relates to a left hip x-ray and does not discuss Plaintiff's strength or coordination (AR 326); the other record is a new treatment note that, while noting "normal range of motion and strength," acknowledges Plaintiff's other limiting symptoms (discussed *supra*) (AR 366). Separately, none of these records speaks to Plaintiff's alleged "intact . . . reflexes."

**REPORT AND RECOMMENDATION - 11**

interpreted to at least suggest that Plaintiff may not be as disabled as he claims. *See, e.g.*, AR 330-31, 335-36. But importantly, the ALJ did not marshal this other evidence (indeed, *any* other evidence besides Dr. Head's examination) when addressing the persuasiveness of PA-C Valora's Statement. Had the ALJ done so, and properly synthesized these findings within his critique of PA-C Valora's opinions, more support might exist for his decision. But the Court is not permitted to consider reasoning that was not offered by the ALJ in his decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). As numerous circuit courts have colorfully warned with respect to briefs filed by lawyers, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). This principle applies equally to an ALJ's decision: courts may not speculate as to an ALJ's findings or the basis of an ALJ's unexplained conclusions. *See Mansfield v. Kijakazi*, 2022 WL 4056244, at *5 (E.D. Cal. 2022) ("This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion.") (internal quotation marks and citation omitted).

At bottom, the ALJ failed to adequately articulate the consistency factor when evaluating the persuasiveness of PA-C Valora's opinions pursuant to the regulatory factors. *See* 20 C.F.R. § 404.1520c(b)(2). This error was potentially harmful because it resulted in an RFC determination that did not account for PA-C Valora's assessed functional limitations.

   c.  NP-C DeHaan

In a July 8, 2015 letter, NP-C DeHaan opined that, based on Plaintiff's history of back pain, he is limited only to sedentary work, constrained by a five pound lifting limit. AR 512. The ALJ found this opinion unpersuasive because it (i) preceded Plaintiff's alleged onset date,

and (ii) as with PA-C Valora's Statement, was inconsistent with the overall medical evidence of record.  AR 30.  Plaintiff again disagrees.  Pl.'s Brief at 15-17 (Dkt. 18) (relying mostly on the same arguments raised vis à vis the ALJ's handling of PA-C Valora's opinions).

The undersigned generally agrees with Plaintiff.  The reasons the ALJ gave for discrediting NP-C DeHaan's opinion are not supported by substantial evidence.

First, the ALJ failed to evaluate the supportability of NP-C DeHaan's opinion pursuant to the regulations.  Under the supportability factor, the ALJ considers how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" in determining that opinion's persuasiveness.  *Supra* (quoting 20 C.F.R. § 404.1520c(c)(1)).  Here, the ALJ did not articulate any consideration whatsoever of the objective evidence and supporting explanations provided by NP-C DeHaan before dismissing her opinion as unpersuasive.  The revised regulations require this analysis.  *Supra* (citing 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medial source's medical opinions . . . in your determination or decision.")).

Second, medical opinions are not *per se* irrelevant merely because they predate the disability onset date.  It is true that "[m]edical opinions that predate the alleged onset of disability are of *limited relevance*."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (emphasis added).  Nevertheless, the Ninth Circuit has not ruled that such opinions may be altogether ignored; to the contrary, an ALJ is still required to "consider all opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Williams v. Astrue*, 493 Fed. Appx. 866, 868 (9th Cir. 2012) (ALJ erred by silently disregarding medical opinions that predated alleged disability onset date); *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical report from before disability period was relevant to the issue of whether claimant's condition had worsened since a previous determination of non-disability).  This is

**REPORT AND RECOMMENDATION - 13**

particularly so when, as is the case here, NP-C DeHaan's opinion was relatively close-in-time to Plaintiff's alleged onset date and addressed not only Plaintiff's understood impairments, but also those impairments' corresponding limitations. *See, e.g.*, *Crystal O. v. Kijakazi*, 2021 WL 5774395, at *2 (W.D. Wash. 2021) (error to disregard opinion that was four months before the alleged onset date). Aside from pointing out the timing of NP-C DeHaan's opinion, the ALJ does not explain why that fact makes it less persuasive in this context.

Third, apparently speaking to the consistency factor, the ALJ again relied *exclusively* upon Dr. Head's February 15, 2018 opinions to support his claim that NP-C DeHaan's opinion conflicts with the medical evidence. AR 30 (citing AR 330-39). Except, as stated above, the ALJ is not even persuaded by Dr. Head's opinions. *Supra*. And, as also stated above, the ALJ's cursory references to findings within Dr. Head's examination come up short in any event. *Id.* Without more, this incongruity cannot be reconciled and, likewise, cannot amount to substantial evidence for discrediting NP-C DeHaan's opinion as inconsistent with the record.

In sum, the ALJ failed to adequately articulate the supportability and consistency factors when evaluating the persuasiveness of NP-C DeHaan's opinion pursuant to the regulatory factors, while lending too much unexplained credence to the fact that NP-C DeHaan's opinion predated Plaintiff's alleged onset date. *See* 20 C.F.R. § 404.1520c(b)(2). These errors were potentially harmful because they resulted in an RFC determination that did not account for NP-C DeHaan's assessed functional limitations.

    2.    <u>The ALJ's Evaluation of Plaintiff's Subjective Complaints</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In rejecting a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). As described above, the ALJ erred in his assessment of certain medical opinion evidence. *Supra*. Therefore, the Court will not address issues surrounding Plaintiff's credibility in any great depth, considering how the ALJ's credibility determination is necessarily tethered to the medical record. Suffice it to say, for the reasons discussed herein, the evidentiary landscape for questioning Plaintiff's credibility has changed.

  3. <u>The Remedy</u>

In this case, the reasons given by the ALJ for rejecting the medical opinions of PA-C Valora and NP-C DeHaan are not properly supported, potentially affecting the ALJ's RFC analysis. When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits. *Treichler*, 775 F.3d at 1099. The proper course turns on the utility of further

**REPORT AND RECOMMENDATION - 15**

proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id*. at 1100. In most cases, however, remand for additional investigation or explanation is preferred. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Such remands allow the ALJ to resolve any outstanding issues in the first instance.

Here, it remains uncertain whether the ALJ would be required to award Plaintiff full benefits if the errors in the ALJ's treatment of the medical opinions are properly addressed. Therefore, the undersigned recommends that the matter be reversed and remanded for further proceedings under the ordinary remand rule. On remand, the ALJ should be directed to reevaluate the medical record consistent with this Report and Recommendation.

## IV. RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Petition for Review (Dkt. 1) be **GRANTED** and the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this Report and Recommendation.

**Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), the briefing period to submit objections is shortened as follows: Any objections to this Report and Recommendation must be filed no later than Tuesday, March 14, 2023, and shall not exceed 20 pages; a response to any objections shall be filed no later than Friday, March 24, 2022 and shall not exceed 20 pages.**

DATED: March 2, 2023

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 16**